United States District Court
Southern District of Texas
**ENTERED**
December 16, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| VIRGINIA RODRIGUEZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § CIVIL ACTION NO. 1:23-CV-172 |
| | § |
| CT RESTAURANTS, L.P., | § |
| | § |
| Defendants. | § |

## ORDER AND OPINION

In November 2023, Plaintiff Virginia Rodriguez commenced this action in a Texas state court, alleging a premises liability claim against Defendant CT Restaurants, L.P. ("Church's Chicken"), after Rodriguez slipped and fell at one of its restaurants.

Church's Chicken removed the lawsuit to this Court based on 28 U.S.C. § 1331, and now moves for summary judgment as to Rodriguez's claim. (*See* Notice of Removal, Doc. 1; Mot., Doc. 9) Based on the record and the applicable law, the Court concludes that Church's Chicken is entitled to the relief that it requests.

**I.    Summary Judgment Facts and Procedural History**

Around 5:00 p.m. on November 1, 2022, Rodriguez entered a Church's Chicken restaurant in Raymondville, Texas. Rain had fallen in the area earlier that day, but had stopped by the time Rodriguez arrived at the restaurant, and she does not recall whether the sidewalk remained wet. She parked on the west side of the building, which had two doors: a glass door entrance and, to its right, a metal door that Rodriguez assumed employees used to access the parking lot and the dumpsters. She parked in front of the metal door and, as she walked to and entered the restaurant through the glass door, did not notice anything unusual in the parking lot or the sidewalk.

After she received her to-go order, she exited through the glass door and walked to her left on the sidewalk adjoining the building. As she neared her car, she "hadn't been paying any

attention" to the ground. (Rodriguez Dep. (Vol. II), Doc. 9–2, 113:16; *see also* Rodriguez Dep. (Vol. I), Doc. 9–1, 42:2–3 ("I didn't look.")) She took a few steps and turned to step down from the sidewalk toward her vehicle. At that moment, "I just felt that I slipped; and once I slipped, I just fell to my left side." (Rodriguez Dep. (Vol. I), Doc. 9–1, 40:16–19) She also described the moment as falling "like on the edge of the sidewalk." (*Id.* at 44:16–20) After her fall, she could not get back on her feet by herself, but an older gentleman assisted her and escorted her back into the restaurant.

After talking with at least one employee, Rodriguez left the restaurant and drove to her home. She returned that day around 7:00 p.m. with her husband and an employee of her attorney's law office. When they arrived at the restaurant, Rodriguez saw a puddle of water and lard on the sidewalk where she had fallen. They took photographs of the area and submit them as summary judgment evidence. (*See* Photos, Doc. 18–2, 18–3, 18–4, 18–5)

The first photograph (Doc. 18–2) depicts a portion of a parking space, with a concrete parking block and the edge of the sidewalk shown. The concrete appears wet in some areas, with black stains and possibly some type of dark substance. The photograph permits the reasonable inference that an individual would avoid walking through the area as possibly slippery or otherwise a dangerous condition. But, the summary judgment record contains no evidence about who took the photograph or the area that it depicts. In the text of her Response, Rodriguez claims that the photograph constitutes a "[p]icture of area where Plaintiff fell," but she submits no competent summary-judgment evidence supporting the statement.[1] (Resp., Doc. 18, 2); *see Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.").

---

[1] Church's Chicken submitted the entire deposition of Rodriguez, but she does not appear to have been questioned about this particular photograph. While the parties provide full deposition transcripts, the Court only looks to the sections of the transcripts that the parties cite to or that relate directly to matters they discuss, such as the photographs. Parties must "cit[e] to particular parts of materials in the record" in connection with summary-judgment briefing. FED. R. CIV. P. 56. And "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quotation omitted).

The second photograph (Doc. 18–3) shows a close-up of the edge of a sidewalk, reflecting stained concrete covered with a liquid or a dark substance. In her deposition, Rodriguez testified that she did not know what area the photograph shows. In her Response, Rodriguez describes the photograph as a "[c]lose up of substances on the ground where Plaintiff fell," but presents no evidence regarding the photograph beyond her inconclusive deposition testimony. (Resp., Doc. 18, 2)

The third photograph (Doc. 18–4) depicts a sidewalk containing black stains and some wet areas, with a metal door to a building at the top of the photograph. One dark, possibly wet area resembles splatter marks, as if a substance was dropped or splashed onto the concrete. In her deposition testimony, Rodriguez identifies the metal door as the kitchen door in front of which she parked and near where she fell. Her testimony supports the description in the response: "Overview of area where Plaintiff fell." (Resp., Doc. 18, 2)

The final photograph (Doc. 18–5) shows part of a parking lot, a sidewalk, and a metal door to a building. The concrete appears dry and contains black stains in various places. Rodriguez describes the photograph as "Defendant's picture showing condition of premises when dry," but presents no summary-judgment evidence regarding the photograph. (Resp., Doc. 18, 2)

Rodriguez alleges that as a result of her fall, she suffered physical injury and mental anguish. She filed this lawsuit against Church's Chicken, alleging a premises liability claim under Texas law. In August 2024, Church's Chicken filed its Motion for Summary Judgment (Doc. 9), arguing that Rodriguez presents no evidence showing that Church's Chicken had actual or constructive knowledge of any dangerous condition that caused her fall.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "If the dispositive issue is one on which the

nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "[W]hile it is true that a movant cannot support a motion for summary judgment with a conclusory assertion that the nonmovant has no evidence to support his *case*, a movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* of the nonmovant's claim." *Id.* at 335 n.10 (emphasis in original). Courts cannot "assume, however, in the absence of any proof, that the nonmoving party could or would prove the necessary facts." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009).

### III.   Analysis

#### A.  Governing Legal Principles

Rodriguez alleges a premises liability claim under Texas law. In this state, property owners owe invitees "a duty to exercise reasonable care to protect [invitees] from dangerous conditions in the store that were known or reasonably discoverable." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). To prevail on a such a cause of action, a plaintiff must prove four elements: (1) actual or constructive knowledge of a condition on the premises; (2) that the condition posed an unreasonable risk of harm; (3) that the owner failed to exercise reasonable care to reduce or eliminate the risk; and (4) that the owner's failure to use such care proximately caused the plaintiff's injury. *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam). In its Motion, Church's Chicken challenges Rodriguez's ability to create a fact issue as to the first

element–i.e., the company's actual or constructive knowledge of the allegedly-dangerous condition.

A plaintiff can satisfy the knowledge requirement by demonstrating that: "(1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017) (quoting *Reece*, 81 S.W.3d at 814). A plaintiff may rely upon both direct and circumstantial evidence of a defendant's knowledge, but circumstantial evidence must "either directly or by reasonable inference" support the conclusion that the defendant had knowledge of the alleged risk. *McCarty*, 864 F.3d at 358 (citing *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 394 (Tex. 2016)).

In the present matter, Rodriguez concedes that no evidence shows that Church's Chicken had actual knowledge of the allegedly-dangerous condition. (Resp., Doc. 18, 2) Instead, she argues that Church's Chicken had constructive knowledge based on the "ample time to discover the unreasonably dangerous condition". (*Id.* at 1)

Under Texas law, an invitee can establish constructive knowledge under the "time-notice rule," which requires "proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice". *Reece*, 81 S.W.3d at 815. When considering whether the condition existed for a sufficiently-reasonable amount of time to allow for the discovery of the condition, courts consider evidence of longevity, conspicuity, and proximity. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006). The three factors work in unison. "An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it." *Reece*, 81 S.W.3d at 816 (emphasis in original). "[I]f the dangerous condition is conspicuous[,] then an employee's

proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. . . . [I]f an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition." *Reece*, 81 S.W.3d at 816.

In the context of a summary-judgment analysis, the plaintiff must provide some evidence related to these three factors so as to create a fact issue regarding constructive knowledge. The failure to do so proves fatal to the cause of action. *See, e.g.*, *McCarty*, 864 F.3d at 360 (affirming summary judgment for the defendant because no evidence provided temporal context for the allegedly-dangerous condition); *Granados v. Wal-Mart Stores, Inc.*, 653 F. App'x 366, 370 (5th Cir. 2016) (affirming summary judgment for the defendant because of the lack of evidence concerning the longevity of an inconspicuous spill, although the spill was proximately close to employees); *Hensley v. Wal-Mart Stores Inc.*, 290 F. App'x 742, 744 (5th Cir. 2008) (affirming summary judgment for the defendant as the plaintiff "did not provide evidence to identify the liquid, state where it came from, indicate how it got on the floor, or otherwise submit information as to how long it was there before the incident").

### B. Consideration of Summary Judgment Evidence

In the present matter, Rodriguez submits four photographs allegedly from the scene of her fall. Those images, however, prove largely irrelevant and represent no evidence as to Church's Chicken's constructive knowledge. As an initial matter, Rodriguez could identify only one of the photographs (Doc. 18–4). She provides no competent summary judgment evidence regarding the other three, aside from her own descriptions in her Response. But even assuming that the photographs all depict the area where she fell, the summary judgment record only permits the conclusion that the photographs capture the scene hours *after* her fall. The photographs in themselves represent no evidence of an alleged condition from hours earlier. And no other

summary judgment evidence even attempts to connect the photographs to the area at the relevant time period.

Rodriguez argues that the "nature of the substance [reflected in the photographs] is such that it had likely been there for a period long enough to have been discovered", and that "the markings on the sidewalk show that there were substances present for longer than a few hours." (Resp., Doc. 18, 4)  The Court agrees that the photographs present some evidence that the black stains in the photographs had existed for some time.  But black stains in a parking lot by themselves are no evidence of a dangerous condition.  And Rodriguez alleges that she slipped on lard or a similar slippery-substance. (*See, e.g.*, Compl., Doc. 1–4, 2 ("[H]er foot slipped on what appeared to be a mixture of grease and some other substance."))  She presents no evidence and does not appear to argue that the black stains caused her fall.  And to the extent that the photographs depict water or other substances on the sidewalk that may have been slippery, Rodriguez offers no evidence that any such water or other substances were present when she fell, much less for a time period before then that would have allowed Church's Chicken sufficient time to discover it.  Even if the Court accepted that water or another substance represented a conspicuous dangerous condition, such evidence would constitute no evidence of constructive knowledge without evidence of longevity. *See Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 315 (5th Cir. 2003).

The photographs also present no evidence of a dangerous condition with sufficient proximity to Church's Chicken employees to provide them with a reasonable time to discover the condition.  Rodriguez parked and fell in front of a metal door, which, facing the door, was to the right of the glass door entrance to the restaurant.  Rodriguez presents no evidence that any Church's Chicken employee inside the restaurant should have been able to see the area where she fell.  At most, she mentions in her Response that Church's Chicken's "own policies require that it inspect the premises twice a day: once before 10:00 a.m. and once again at 4:00 p.m. during the

employee shift change." (Resp., Doc. 18, 1)  Even assuming that Church's Chicken maintained such a policy, it is by itself no evidence of longevity, proximity, or conspicuity. *See, e.g., Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 543 (5th Cir. 2005) (affirming summary judgment; "We decline to impute constructive knowledge of the oil puddle to Swift based solely upon its own internal operating procedure requiring pre-trip inspections.").

After reviewing the record in the light most favorable to Rodriguez, the Court concludes that no genuine dispute of material fact exists as to whether Church's Chicken had constructive knowledge of any dangerous condition on its premises at the time of Rodriguez's fall, much less that any dangerous condition existed long enough to give the premises owner a reasonable opportunity to discover it.

**C. Spoliation**

Rodriguez also raises spoliation, arguing that Church's Chicken "intentionally failed to preserve video evidence," and that had Church's Chicken preserved the video, Rodriguez "would be able to demonstrate the specifics of the hazardous condition responsible for Plaintiff's fall." (Resp., Doc. 18, 3–4)  Although the Court agrees that the record demonstrates that Church's Chicken failed to preserve a discoverable video from the day in question, the Court concludes that Rodriguez fails to demonstrate that this failure amounts to spoliation or that it creates a fact issue as to Church's Chicken's constructive knowledge.

Spoliation of evidence is "the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D. Tex. 2010)). "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman*, 804 F.3d at 713 (citing *Rimkus*, 688 F.Supp.2d at 612).  "[C]ommon sense dictates that a party may reasonably anticipate suit being filed . . . before the plaintiff manifests an intent to sue" and

"trial courts must look at the totality of the circumstances and decide whether a reasonable person in the party's position would have anticipated litigation". *Trevino v. Ortega*, 969 S.W.2d 950, 956 (Tex. 1998); *see also Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573–74 (5th Cir. 2020) (concluding that the defendant had a duty to preserve evidence related to the cause of a fire when it received immediate notice of the fire by telephone, received written notice one month later, and counsel for both parties participated in a joint inspection three weeks after written notice); *Rimkus*, 688 F.Supp.2d at 641 (finding a duty to preserve existed when e-mails among the defendants discussed "the final steps of the plan to sue" the plaintiff and the defendants "knew that they would be suing [plaintiff] within days").

If a court finds that a party spoliated evidence, the court may impose appropriate sanctions. FED. R. CIV. P. 37(c)(1). In a trial setting, a finding of spoliation often results in an adverse inference against the spoliator, with an instruction to the jury that it may infer that the destroyed or altered evidence would have disfavored the spoliator. *See Guzman*, 804 F.3d at 713 (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)); *see also King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (citing *United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000)). In the context of a summary judgment motion, the party demonstrating that spoliation occurred can rely on an adverse inference to create an issue of fact. *See Whitt v. Stephens Cnty.*, 529 F.3d 278, 285 (5th Cir. 2008) ("[A]n inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment.") (citation omitted); *see, e.g.*, *Rimkus*, 688 F.Supp.2d at 659, 664 (denying in part defendants' motion for summary judgment based in part on spoliation that concealed and delayed producing relevant information). A party seeking an adverse-inference instruction based on spoliation must prove (1) that the party with control over the evidence had a duty to preserve it at the time of destruction, (2) that the evidence was destroyed with a culpable state of mind, and (3) the destroyed evidence was relevant to the alleging party's claim or defense

"such that a reasonable trier of fact could find that it would support that claim or defense." *Coastal Bridge Co.*, 833 F. App'x at 574. Applying an adverse inference based on the spoliation of evidence is predicated on a finding of bad conduct or bad faith on the part of the defendant. *See King*, 337 F.3d at 556; *Wise*, 221 F.3d at 156. "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713. "It is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence." *See Coastal Bridge Co.*, 833 F. App'x at 573.

Here, the summary judgment record reflects that Church's Chicken failed to preserve a video that would fall within the permissible scope of discovery. In a deposition, a Church's Chicken corporate representative testified that she reviewed a video showing Rodriguez as she "walked in and out" of the restaurant. (Corp. Rep. Dep., Doc. 18–1, 52:8) At the time, Church's Chicken maintained a document-retention policy through which such videos would "go away" after three months. (*Id.* at 51:22–24) Church's Chicken took no steps to suspend that policy as to the video in question, resulting in the video not being preserved. The corporate representative explained that she took no steps to preserve the video or suspend the document-retention policy:

> Q. Did you notify anybody to keep that video?
> A. No, because I didn't see nothing – nothing wrong with it. She just walked in and out.

(*Id.* at 51)

Based on the description of the video, the Court finds that it would fall within the permissible scope of discovery. The video apparently recorded Rodriguez walking into and out of the restaurant on the day in question, and would most likely have recorded the exact time of her visit. The video presumably would also have shown Rodriguez being helped back into the restaurant after her fall, her physical condition at that time, the man who helped her, and her interaction with Church's Chicken employees after her fall. Such evidence would fall well within the scope of Federal Rule of Civil Procedure 26(b)(1).

Rodriguez, however, fails to demonstrate that spoliation occurred. The corporate representative who testified about viewing the video indicated that she did so the same day that Rodriguez fell. The summary judgment record does not show, however, when Church's Chicken should have suspended its document-retention policy. And in any event, no evidence suggests that any Church's Chicken representative believed the video contained adverse information and destroyed the video (or allowed its destruction) for the purpose of hiding such evidence. On the contrary, the Church's Chicken representative who viewed the video testified that she saw "nothing wrong" on the recording. Such evidence does not support a finding of bad faith. At most, the failure to preserve the video stemmed from negligence or oversight.

In addition, Rodriguez fails to demonstrate that the video would include evidence relevant to the issue of Church's Chicken's constructive knowledge. She offers no evidence demonstrating that the video would show the area where she fell. The Church's Chicken representative who viewed the video testified only that the restaurant had an interior camera pointed toward the glass door, and that "no video to that outside" existed. (*Id.* at 50:2) She testified that the video did not show Rodriguez falling. (*Id.* at 50:8–10)

Based on the record, the Court concludes that Rodriguez fails to establish that Church's Chicken spoliated evidence, or that any spoliated evidence would have proven relevant to the issue of Church's Chicken's constructive knowledge of any dangerous condition at the time of Rodriguez's fall. Absent evidence that Church's Chicken acted in bad faith to allow the destruction of the recording, the Court cannot draw an inference of spoliation or impose other sanctions. *See Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952–53 (5th Cir. 2001).

IV.    **Conclusion**

For the reasons stated above, it is:

**ORDERED** that CT Restaurants, L.P.'s Motion for Summary Judgment (Doc. 9) is **GRANTED**; and

**ORDERED** that Plaintiff Virginia Rodriguez's cause of action is **DISMISSED WITH PREJUDICE**.

The Court will separately issue a Final Judgment.

Signed on December 16, 2024.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge